# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

STEVEN HILL, *et al.*,

       Plaintiff,

vs.                                                          No.  CIV 08-319 WPJ/WDS

SANDIA NATIONAL LABORATORIES,

       Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon a Motion for Summary Judgment by Defendant Sandia National Laboratories ("Sandia Lab"), filed October 15, 2008 **(Doc. 17)**. Having considered the parties' briefs and the applicable law, I find that Defendant's motion is well-taken and shall be granted.

### Background

This is an action alleging a violation of the Fair Labor Standards Act or 1938 as amended, 29 U.S.C. §§201, *et seq*. ("FLSA").  Plaintiff filed this lawsuit on behalf of himself and all other Sandia Lab employees who were allegedly denied overtime payment under the FLSA.[1]  Plaintiff contends that he is entitled to overtime pay as provided under the FLSA because he does not fit within the category of non-exempt employees.  Defendant contends that Plaintiff is exempt from the overtime provision of the FLSA; and that if misclassification

---

[1] The Complaint states that Plaintiff "brings this action on behalf of all current and former employees of Sandia National Laboratories that have worked and have been denied the payment of overtime, so have not been fully compensated under the FLSA for such overtime." Compl., ¶ 5.

occurred, it was not willful but occurred in good faith and with reasonable grounds for believing that Defendant was in full compliance with the FLSA.  Defendant also contends that Plaintiff's claims are unsuited for collective action because opt-in plaintiffs hold a variety of different positions.

The parties have stipulated to certain facts: that Plaintiff is employed as a Training Lieutenant; that he and other Protective Force supervisors were sometimes required to work hours in excess of 40 per week; that he is paid on a salary basis and that in the beginning of March 2005, in addition to his salary, Plaintiff received hourly pay at his regular rate of pay for all hours worked over 40 per week; and that Plaintiff's total annual compensation in each calendar year 2006 and 2007 was greater than $100,000. Plaintiff seeks relief in the form of unpaid overtime wages, liquidated damages in an amount equal to the overtime wages, attorney's fees and costs, pursuant to 29 U.S.C. §216(b).

## II.    Undisputed Facts[2]

Plaintiff is employed by Sandia as a Training Lieutenant in Sandia's Protective Force. Plaintiff's primary duty is training other Protective Force members.  Sandia is in the business of scientific research and development.  Plaintiff does not perform scientific research or development. Rather, his primary job is training the people who guard the facilities where the research and development is being done.  Plaintiff is paid on a salary basis.  Parties have

---

[2] Defendant represents that its statement of facts presented are not in dispute.  Plaintiff has not presented any material issues of fact responsive to Defendant's enumerated statements of facts, as required under D.N.M.LR-Civ. 56.1(b).  Instead, Plaintiff simply lists his own statement of facts, presumably assuming that the Court would figure out which particular statements of fact are undisputed.  The Court does not intend to do Plaintiff's work for him, and considers Defendant's statement of facts on pages two to four of its motion as undisputed.  The Court must consider whether summary judgment is appropriate based on the legal significance of the facts. See Rummel v. Lexington Ins. Co., 123 N.M. 752, 758 (1997).

stipulated that Plaintiff's "total annual compensation" is greater than $100,000, although Plaintiff's now appears to be backing away from that stipulation. Plaintiff is paid at least $455 per week, every other week.

Plaintiff's job functions and responsibilities are summarized in the Functions, Responsibilities, and Authorities Manual ("FRAM").  Ex. 2 attached to Hill Dep.  According to the FRAM, the Sandia Training Lieutenants are the subject matter experts on Protective Force training ("The Training Lieutenants provide input and assist in the development, design, and/or revision of courses.") FRAM at 003250. The responsibilities of the Training Lieutenants are described in the FRAM as follows:

> "The Training Lieutenants' responsibilities are for the development of instructional material and for providing training to Protective Force personnel as follows:
> . Develop and revise of lesson plans.
> . Evaluate training.
> . Evaluate student performance during and after training.
> . Implement performance-based instruction.
> . Schedule and coordinate facilities... and courses.
> . Validate training….
> . Ensure firearms and range safety.
> . Conduct semi-annual firearms qualifications.
> . Conduct practice and remedial firearms training.
> . Coordinate marksmanship team competition program.
> . Conduct firearms testing and evaluation.
>
> FRAM at 003250-3251.

Plaintiff performs his work in a variety of locations including an office, a classroom, on Sandia's live-fire range, and sometimes at other locations. When writing or assisting in writing lesson plans, Plaintiff is primarily working in an office environment. Hill Dep. at 60: 20-23. When delivering lectures, Plaintiff is primarily working in a classroom setting. Id. at 17: 6-10. When operating range equipment, Plaintiff is primarily working on the live-fire range or other

outdoor ranges. Id. at 17: 11- 24. Other places Plaintiff works include a façade or mock-up facility. Id. at 20: 9-12. 10. Almost all of Plaintiff's work time is spent either preparing to deliver training, delivering training, or reporting the results of training. Id. at 51: 24 to 52:3. 11. Plaintiff estimates that he spends about 15% of this time delivering training and about 5-10% of his time on administrative work to prepare for training. Id. at 63: 22 to 64: 5. Plaintiff estimates that only 30-35% of his time is spent doing manual labor incident to his training activities. Id. at 54: 10-11. Plaintiff estimates that enforcing safety requirements amounts to 25% of his time. Id. at 56: 1-2. Only about 2% of Plaintiff's time is spent working on shift as a security officer on patrol or at a post. Id. at 64: 12-13.

Plaintiff's "material facts" do not correspond to any of Defendant's statement of undisputed facts, and relate to his arguments that he is – or should be considered – a nonexempt employee. Plaintiff asserts that prior to March 2005, Plaintiff was paid at one and one-half times his hourly rate for any hours worked in excess of 40 hours weekly. He was advised at that time that he would be compensated either only at his hourly rate, or he could accrue flex time. Plaintiff did not consent to the new pay scheme and raised his objection to his supervisors. Plaintiff also contends that only his base pay should be considered in calculating his "total annual compensation."

### III. Legal Standard

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). We consider the facts and all reasonable inferences drawn therefrom in a light most favorable to the

nonmoving parties. Hollander v. Sandoz Pharmaceuticals Corp., 289 F.3d 1193, 1214 (10th Cir.2002). "In this respect, we must view the evidence in context, not simply in its segmented parts." McCowan v. All Star Maint., Inc., 273 F.3d 917, 921 (10th Cir.2001).

## Discussion

Under the FLSA, a "high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties." 29 CFR § 541.601(c).

> An employee with total annual compensation of at least $100,000 is deemed exempt under section 13(a)(1) of the Act if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee identified in subparts B, C or D of this part.

29 CFR § 541.601(a).

Further, to qualify for the highly compensated employee exemption, an employee's "[t]otal annual compensation must include at least $455 per week paid on a salary or fee basis." 29 CFR § 541.601(b)(1) (internal quotation marks omitted).

Subparts B, C and D Subpart C refer to a description of the exempt duties of executive, administrative or professional employees. Defendant contends that Plaintiff meets all the requirements for the highly compensated employee exemption under 29 CFR § 541.601(a) because Plaintiff has a total annual compensation of $100,000 and performs one or more of the exempt duties or responsibilities listed for "administrative employees" under Subpart C, 29 CFR § 541.200– namely, that Plaintiff regularly performs office or non-manual work; and that Plaintiff's work is related to Sandia's general business operations. 29 CFR § 541.200 (a)(1) &(2).

Under 29 CFR § 541.200 (a), an administrative employee is considered exempt under the

5

FLSA if (1) he is compensated on a salary or fee basis at a rate of not less than $455 per week, exclusive of board, lodging or other facilities;[3] (2) his primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) his primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

Under the express language of § 541.601(a), a plaintiff need not perform all of the duties listed in order to be considered exempt under the FLSA, as long as he has a total annual compensation of at least $100,000.[4] For this reason, Defendant addresses only the first two requirements concerning an administrative employee. Thus, the Court need not consider that part of Plaintiff's argument or exhibits addressing the third requirement, nor the case law cited by Plaintiff on that issue. The analysis will focus on whether Defendant has succeeded in its contentions regarding the second factor, since it is undisputed that Plaintiff earns at least $455.00 per week on a salary basis. See Deft's Undisp. Fact No. 6; Resp. at 13.

## II.     Plaintiff's Total Annual Compensation

Parties have stipulated that Plaintiff's total annual compensation ("TAC") in 2006 and 2007 was greater than $100,000, which constitutes a stipulation that Plaintiff was "deemed exempt" under 29 CFR§ 541.601(a) with regard to Plaintiff's TAC. See Joint Status Report, Doc. 12. However, Plaintiff now argues in his response that in calculating the TAC, only his

---

[3] It is undisputed that Sandia does not provide board or lodging for Plaintiff.

[4] See also 29 CFR § 541.601(c): "A high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties. Thus, a highly compensated employee *will qualify for exemption if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities* of an executive, administrative or professional employee identified in subparts B, C or D of this part." § 541.601(c) (emphasis added).

base pay should be considered, and in particular – that discretionary bonuses should not be included in the calculation. Plaintiff does not give a reason for backpedaling from the stipulation, but instead focuses on the fact that he did not consent to the new "pay scheme" and raised his objection to his supervisors.

> Under Department of Labor ("DOL") regulations, TAC must include: at least $455 per week paid on a salary or fee basis. Total annual compensation may also include commissions, *nondiscretionary bonuses and other nondiscretionary compensation* earned during a 52-week period. Total annual compensation does not include board, lodging and other facilities as defined in § 541.606, and does not include payments for medical insurance, payments for life insurance, contributions to retirement plans and the cost of other fringe benefits.

Under 29 CFR § 541.601(b)(1) (emphasis added).

Plaintiff contends that without the bonuses, his TAC would have been less than $100,000, and thus Defendant cannot establish that he is a highly paid employee as defined by the FLSA. He points out that in 2006, he received $8900 for an Individual Performance Award ("IPA"); in 2007 he received $8200 in an IPA and in 2008, he received $4000 in an IPA. Plaintiff contends that these are discretionary bonuses because he received them in different amounts and they were not part of his salary package.

The Court is not inclined to ignore Plaintiff's stipulation regarding total annual compensation. However, the Court also rejects Plaintiff's argument that discretionary bonuses should not be considered. The regulation does not specifically address whether discretionary bonuses should be included in the calculation of the TAC. The DOL did not adopt comments suggesting that discretionary bonuses should be included in TAC calculation there was "not enough information in the record on the frequency, size and types of such payments." 69 Fed.Reg. 22122, 22175 ("Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees").

There is no authority for Plaintiff's assertion that only base pay is used to calculate total annual compensation for purposes of 29 CFR § 541.601. Plaintiff offers as guidance 29 USC § 207(e), as interpreted in <u>Madison v. Resources for Human Development</u>, 39 F.Supp.2d 542 (E.D.Pa. 1999), <u>vacated on other grds</u>, 233 F.3d 175 (3d Cir. 2000).[5] The Court in <u>Madison</u> determined that bonuses which are discretionary are excluded under 29 USC § 207(e). However, that statute does not resolve the issue because it does not address or define calculation of the TAC, but rather defines what is meant by "regular rate" in the context of an employee's wages. That provision also expressly excludes discretionary bonuses - which include sums paid as gifts or "in recognition of services where payment and the amount of the payment are determined at the sole discretion of the employer . . ." "and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly.

Defendant's argument is more persuasive. Defendant argues that the FLSA's regulatory scheme envisions an inclusion of discretionary bonuses, based on the language in 29 CFR § 541.601(b)(2):

> If an employee's total annual compensation does not total at least the minimum amount established in paragraph (a) of this section by the last pay period of the 52-week period, the employer may, during the last pay period or within one month after the end of the 52-week period, make one final payment sufficient to achieve the required level. . . . If the employer fails to make such a payment, the employee does not qualify as a highly compensated employee, but may still qualify as exempt under subparts B, C or D of this part.

29 CFR § 541.601(b)(2).

An employer's payment under this provision is certainly discretionary, and under the regulations is expressly intended to be included in the calculation of TAC in order for the

---

[5] Plaintiff incorrectly uses a CFR citation, which does not exist. <u>Madison</u> refers to the federal statute, 29 USC § 207(e), *not* 29 CFR § 207(e). <u>See</u> Resp. at 7.

employee to maintain an exempt status under the FLSA.  While the DOL could have expressly included discretionary bonuses in § 541.601(b)(1), the fact that the agency promulgated a regulation to address discretionary payments under § 541.601(b)(2) sufficiently establishes that Plaintiff's discretionary bonuses from his employer should be included in the calculation of his TAC.

It is undisputed that Plaintiff makes at least $455 per week on a salary basis.  It is also undisputed that if discretionary bonuses are included, Plaintiff's TAC would be $100,000, and thus Plaintiff meets the TAC requirement for exempt employees under the FLSA.

Plaintiff also contends that without forced excessive overtime hours, he would not have been close to earning the $100,000 necessary to be considered a "highly compensated" employee in 2006 and 2007.[6]  However, Plaintiff points to no provision in the FLSA which prohibits an employer from requiring its exempt employees to work until the job is done, even if that means working more than forty hours a week.  The fact that Plaintiff is paid at his regular hourly rate for every hour over 40 that he works in a work week does not make him a non- exempt employee.  The law is clear that paying Plaintiff a premium over and above his salary, even at a straight time rate, does not jeopardize Plaintiff's exempt status. See, Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 427, 439-40 (1945) (Stone, J., dissenting) ("It is

---

[6] The Court finds Defendant's restatement of Plaintiff's contention interesting: essentially, Plaintiff argues that he does not qualify for the highly compensated employee exemption because, even though he earns more than $100,000, he does not want to work that hard.  Reply at 6.  Plaintiff also argues that Sandia's policy advises that "exempt employees who work over 48 hours per week will be paid at two times their hourly wage." Resp., Statement of Fact No. 8.  However, Plaintiff misquotes the policy, which states that "nonrepresented *nonexempt* full-time employees" are paid at twice the hourly rate."  Pltff's Ex. B at 6, ¶ 4.7 ("Overtime Payment").  Thus, as an exempt employee (which applies to Plaintiff thus far in the Court's discussion), Plaintiff would not be covered under that provision.

enough that the weekly wage is that mutually agreed upon in good faith, that it is intended to pay for time and overtime, and that it is sufficient in amount to pay for the first forty hours at a rate above the minimum wage prescribed by the statute and to pay for the overtime at one and one-half times that rate); see also Spradling v. City of Tulsa, Oklahoma, 95 F.3d 1492, 1496 (10th Cir. 1996) ("the salary may consist of a predetermined amount constituting all or part of the employee's compensation," and "additional compensation besides the salary is not inconsistent with the salary basis of payment"); 29 C.F.R. §541.604 ("[a]n employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least [the minimum weekly-required amount] paid on a salary basis.").

Thus, Plaintiff meets the TAC requirement for employees who are deemed exempt under 29 CFR § 541.601(a).  The remaining question is whether Plaintiff "customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee identified in subparts B, C or D. . . ." 29 CFR § 541.601(a).

## III. Whether Plaintiff Performs Office or Non-Manual Work Related to Sandia's Business Operations

Defendant contends that Plaintiff meets the requirements of 29 CFR § 541.200(a)(1) because Plaintiff's primary duty is the performance of office or non-manual work directly related to Sandia's management or general business operations. Of crucial importance is a determination of Plaintiff's "primary duty."

In Plaintiff's deposition, he admitted that 30-35% of time is spent doing actual manual labor.  Thus, the remainder of Plaintiff's work - whether indoors or outdoors, must be non-manual.  8-9 Reply. Employees who spend more than 50 percent of their time performing

10

exempt work will generally satisfy the primary duty requirement." 29 C.F.R. §541.700(b). Thus, Plaintiff customarily and regularly performs at least one of the exempt duties of an administrative employee: the performance of office *or* non-manual work directly related to the management or general business operations of Sandia. *See* 29 C.F.R. § 541.200(a)(2).  As such, Plaintiff meets the requirements of the highly compensated employee exemption. 29 C.F.R. § 541.601(a) (Plaintiff "customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee.").

      In his response, Plaintiff revises the percentages, asserting that his job duties require him to perform various tasks outside of an office environment.  He now claims that about 40% of his job tasks include field work comprised of tasks such as digging holes, maintenance, cleaning and repair of equipment on ranges, unloading steel plates and girders needed for erecting the target systems, and driving and unloading trucks which carry ammunition boxes, weapons and targets needed in the training exercises. Pltff's Ex. A at 5, ¶¶ 34-35; (Deft's Ex. A at 53:18-20) "digging holes, cleaning out holes, moving . . . target systems from place to place").

      I agree with Defendant that Plaintiff's revisions to his sworn testimony should be rejected. See Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806-807 (1999) (party cannot create issue of material fact through sworn statement contradicting previous deposition testimony); see also Burns v. Bd. of County Comm'rs, 330 F.3d 1275 (10th Cir. 2003).  Plaintiff modified his statements during his deposition to reflect that he spent 35% of his time in manual labor, 10% in administration and 15% in training and instruction – which left 40% of his time unaccounted for.  Deft's Ex. A at 62-63.  Plaintiff was advised that he would have the opportunity to review and sign his deposition statements.  Ex. A at 64:22-24.  Plaintiff did not revise the percentages until the until the response was filed, strongly suggesting that the new

11

revisions are nothing more than an attempt to create a dispute of fact that does not exist. See, Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1996) (plaintiff cannot utilize affidavits to contradict prior testimony and create a sham issue of facts).  As a result, Plaintiff's deposition statements indicate that he performs office or non-manual work directly related to the management or general business operations of Sandia under 29 C.F.R. § 541.200(a)(2).

Plaintiff's revised percentages still do not create an issue of fact regarding his performance of office or non-manual labor.  Plaintiff does not dispute that his primary duty is training and instruction, but claims that he spends sufficient time working outdoors performing training, and preparing for the training exercises so as to preclude him from being considered an exempt employee under the FLSA.

However, Plaintiff mistakenly believes that if his work is not performed in an office, it must be manual work.  There is nothing in the language of 29 CFR § 541.200(a)(2) which suggests that work not performed in an office is considered "manual."  In fact, the language expressly indicates that work performed somewhere other than in an office can be "non-manual" work.  The regulation calls for "office *or* non-manual work," 29 C.F.R. § 541.200(a)(2).

Not all outdoor labor is "manual" labor.  "Manual" workers are "non-management production-line workers and non-management employees in maintenance, construction and similar occupations such as carpenters, electricians, mechanics, plumbers, iron workers, craftsmen, operating engineers, longshoremen, construction workers, laborers and other employees who perform work involving *repetitive operations with their hands, physical skill and energy*." 29 C.F.R. § 541.601(d) (emphasis added).

According to the undisputed facts, Plaintiff performs his work in an office, a classroom, and on shooting ranges.  He lectures, demonstrates, instructs, and prepares to do those things. He

tests, evaluates, and reports grades. Fact 8.  Almost all of Plaintiff's work time is spent either preparing to deliver training, delivering training, or reporting the results of training. Fact 10. His primary duties do not involve repetitive operations with his hands. Enforcing safety requirements "is actually a lot of [Plaintiff's] job." Hill Dep. at 36: 16-22. Plaintiff conducts safety briefings and monitors hazardous activities. Id. When he is monitoring safety on the live fire range, Plaintiff is not directing any activities; he is "just watching to make sure these guys aren't putting a finger on a trigger  when they are. . . not supposed to, they are not pulling the pin on a flashbang and blowing their hand off." Hill Dep. at 56; 14-18.  Plaintiff himself estimates that about 25% of his time is spent enforcing safety requirements.

Plaintiff's work may involve some manual labor, but it is the "primary duty" that matters here. A "primary duty is that which is of principal importance to the employer." Reich v. Wyoming, 993 F.2d. 739, 742 (10th Cir. 1993) (the employee's primary duty is that which is of principal importance to the employer, rather than collateral tasks which may take up more than fifty percent of his or her time).

## IV.    Continuation of Lawsuit with Opt-In Plaintiffs

Last, the Court must decide how granting summary judgment to Defendant affects the purported collective action in this case.  Thirty-two of Plaintiff's "similarly situated" co-workers have filed their consent forms and "opted in" to this litigation.  Doc. 9.  Defendant contends that the collective action must be dismissed in its entirety if Plaintiff's claims are dismissed. See Murray v. Ohio Cas. Corp., 2005 WL 2373857, 9 (S.D.Ohio) (S.D.Ohio,2005) (plaintiff cannot purport to assert claims on behalf of others where her own FLSA claim failed to survive summary judgment).

Defendant further argues that the case be dismissed in its entirety on the basis that the

FLSA requires that plaintiffs in a collective action be "similarly situated." Having concluded that Plaintiff is an exempt employee under the FLSA, other plaintiffs "similarly situated" to Plaintiff would have no claim under the FLSA because they, too, would be exempt as highly compensated employees.

Plaintiff does not offer any counter arguments which persuade the Court that this action should survive dismissal of Plaintiff's claims.

## Conclusion

The Court concludes that there is no legal basis to exclude Plaintiff's bonuses from the calculation of his total annual compensation. Nor does the fact that Plaintiff works outside mean that his primary duty is manual work as that term is defined in the regulations. Because he is exempt from the Fair Labor Standards Act ("FLSA"), Plaintiff has no claim for overtime pay and cannot represent any of his co-workers in a collective action brought under 29 U.S.C. § 216(b).

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment filed by Defendant Sandia National Laboratories **(Doc. 17)** is hereby GRANTED for reasons set forth above in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that as a result of the Court granting Defendant's Motion for Summary Judgment and dismissing Plaintiff's claims in their entirety, none of the claims of the alleged "similarly situation" co-workers who have filed consent forms opting in to this litigation survive the granting of Defendant's Motion for Summary Judgment and the Judgment that shall be entered contemporaneously with the filing of this Memorandum Opinion and Order shall dispose of this case in its entirety.

A Judgment will be entered contemporaneously with this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE